UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

_____

KATHLEEN LOGUE,

                            Plaintiff,

            -vs-                                       DECISION AND ORDER

CAROLYN W COLVIN,                             15-CV-6363-CJS
*Acting Commissioner of Social Security*,

                            Defendant.
_____

APPEARANCES

| | |
|---|---|
| For Plaintiff: | Mark M. McDonald, Esq.<br>Bond and McDonald<br>91 Genesee Street<br>Geneva, NY 14456<br>(315) 789-8480 |
| For Defendant: | Heetano Shamsoondar, Esq.<br>Social Security Administration<br>Office of General Counsel<br>26 Federal Plaza<br>Room 3904<br>New York, NY 10278<br>(212) 264-2426 |
| | Kathryn L. Smith, A.U.S.A.<br>U.S. Attorney's Office<br>100 State Street<br>Rochester, NY 14614<br>(585) 263-6760 |

INTRODUCTION

**Siragusa, J.** This case is before the Court on cross-motions for judgment on the pleadings. Pl.'s Notice of Motion, Mar. 1, 2016, ECF No. 10; Def.'s Notice of Motion, Jun. 1, 2016, ECF No. 13. Plaintiff seeks a waiver of Title II Disability Insurance Benefits ("DIB") in the amount of $10,364.00. After reviewing the papers and hearing oral argu-

ment, the Court reverses the Commissioner's decision and remands this matter pursuant to sentence four of 42 U.S.C. § 405(g).

## BACKGROUND

Plaintiff had a hearing on September 13, 2013, before a Social Security Administrative Law Judge ("ALJ"). At the hearing, Plaintiff testified that she began receiving DIB in May 1992, returned to work in 1999, and then stopped working again in May of 2002. R. 220–23. She further testified that she notified Social Security in 1999 when she returned to work by calling their toll-free number, R. 220, and was told over the phone that once she earned $10,000.00, her DIB payments would be affected, so she needed to let Social Security know when her earnings hit that threshold. R. 221. In October 1999, once she earned over $9,000.00, she called the toll-free number again and reported that she was nearing the $10,000.00 threshold. R. 222–23. The Social Security employee on the phone told Plaintiff that the rules had changed and that she could work for three years without affecting her DIB payments, but after three years of working, she would no longer be considered disabled. R. 223. Plaintiff kept working, but had to stop in May 2002.

Plaintiff testified she received a letter from Social Security dated January 30, 2002, asking her for additional information about her earnings from January 1999 to the present. R. 132.[1] At about the same time Plaintiff was receiving widow's benefits from Social Security as a result of her husband having been a DIB recipient at the time of his death in 2000. R. 226–28. Plaintiff testified that she responded to the January 2002 letter sometime in February 2002. R. 230. Plaintiff received a November 24, 2002, Notice

---

[1] The letter is addressed to Kathleen A. Hampp, not Kathleen Logue. Plaintiff testified that she changed her name in December 2005 and adopted her now-deceased husband's last name of Hampp.

of Change in Benefits from Social Security. R. 232, 135. That letter notified Plaintiff that her benefits would increase. She received another notice dated July 8, 2003, informing Plaintiff that Social Security would not be reviewing her case, but notifying her that she must report any return to work, or any change in job, pay or work expenses if she was already working, or if her doctor said her health was better. R. 232, 138. She then received a notice dated March 29, 2004, informing her she would be receiving more money. R. 233–34, 141. She had stopped working for good in May 2002, but the letter stated that Social Security was raising her monthly benefits "beginning January 2003 to giver [her] credit for [her] 2002 earnings." R. 141.

Plaintiff received two notices of overpayment of benefits dated July 18, 2004. R. 236, 143, 146. The first notice, R. 143, informed her that she had been overpaid $3,831.00 in benefits. The second notice, R. 146, informed her that payments on one of her Social Security accounts had been increased and should have, therefore, been reduced on another of her accounts. The notice stated she had been overpaid by $938.00. R. 146. Both notices concerned her deceased husband's claim number. R. 237. Social Security recouped the overpayments on a monthly basis. R. 237, 239. Plaintiff testified that she requested a waiver of the overpayment, following the instructions on the notices. R. 237. Finally, Plaintiff received an overpayment notice dated May 2, 2008, indicating that she had been overpaid by $10,346.00. R. 24. She submitted a request for waiver dated May 14, 2013, which listed her income and expenses. R. 239, 103–110.

The ALJ determined that Plaintiff was overpaid by $10,346.00 from June 1, 2000, to March 1, 2002. R. 15. He determined that she was not at fault in causing the over-

payment. *Id.* The ALJ determined that recovery of the overpayment would not defeat the purpose of Title II, and that Plaintiff overstated her monthly expenses of $3,370.00. *Id.* Finally, the ALJ concluded that recoupment of the overpayment would not be against equity and good conscience. R. 16. The Social Security Appeals Council affirmed the ALJ's decision on April 29, 2015, thus making the ALJ's decision the final decision of the defendant Commissioner of Social Security ("Commissioner"). Plaintiff filed this action on June 16, 2015.

## STANDARD OF LAW

This Court has jurisdiction to review the ALJ's decision pursuant to 42 U.S.C. 405(g). *Valente v. Sec'y of Health & Human Servs.*, 733 F.2d 1037, 1041 (2d Cir. 1984) ("the district court must uphold a decision by the Secretary that a claimant was not without fault if it is supported by substantial evidence in the record as a whole, because that determination is factual in nature."). Recovery of overpayments is governed by 42 U.S.C. § 1383(b)(1), which provides in pertinent part as follows:

> The Commissioner of Social Security (i) shall make such provision as the Commissioner finds appropriate in the case of payment of more than the correct amount of benefits with respect to an individual with a view to avoiding penalizing such individual or his eligible spouse who was without fault in connection with the overpayment, if adjustment or recovery on account of such overpayment in such case would defeat the purposes of this subchapter, or be against equity and good conscience....

42 U.S.C.A. § 1383 (West 2015). The Commissioner defines "against equity and good conscience" in 20 C.F.R. 404.509 (1988) as follows: "if an individual [c]hanged his or her position for the worse...or relinquished a valuable right...because of reliance upon a notice that a payment would be made or because of the overpayment itself...."

The Court must review the administrative record to ascertain whether the Commissioner's decision is supported by substantial evidence, and whether the Commis-

4

sioner has abused her discretion. *Valente*, 733 F.2d at 1041. Substantial evidence is "more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Pratts v. Chater*, 94 F.3d 34, 37 (quoting *Richardson v. Perales*, 402 U.S. 389, 401 (1971).

## ANALYSIS

Although the ALJ determined Plaintiff was not the cause of the overpayment, Plaintiff takes issue with his determination that she must have misunderstood correct advice from Social Security concerning a thirty-six-month trial work period. Pl.'s Mem. of Law 8, Mar. 1, 2016, ECF No. 10-2. Plaintiff's counsel points out that, contrary to the ALJ's finding, the only mention of "trial work period" and "extended work period of eligibility" was made by counsel in his opening remarks at the hearing, R. 215, and not in Plaintiff's request for a waiver. R. 63–64. *Id.* The Commissioner contends that the ALJ "concluded that Plaintiff had not been misinformed…." Comm'r's Mem. of Law 10, Jun. 1, 2016, ECF No. 13-1. The Commissioner argues that the ALJ affirmatively found Plaintiff "was given correct information, which she misunderstood." *Id.* 10–11.

At oral argument on the motion, the Commissioner's counsel maintained that even assuming *arguendo* that the ALJ accepted everything Plaintiff said about receiving bad advice from Social Security, it would only affect the ALJ's determination of fault, not whether she should be required to repay under the equity and good conscience factors. However, Plaintiff's counsel pointed out two regulations with which the Commissioner's counsel was evidently unfamiliar. First: "Where an individual…accepts such overpayment because of reliance on erroneous information from an official source within the Social Security Administration…such individual, in accepting such overpayment, will be

deemed to be without fault." 29 C.F.R. § 404.510a. Further, in such a situation, another of the Commissioner's regulations states in pertinent part as follows:

> (a) *Adjustment or recovery deemed "against equity and good conscience."* In the situations described in §...404.510a, adjustment or recovery will be waived since it will be deemed such adjustment or recovery is *against equity and good conscience.*

20 C.F.R. 404.512(a) (emphasis added). The Commissioner's counsel appeared to be unaware that a determination by the ALJ that Plaintiff received and relied on erroneous information from the Administration would also impact the equity and good conscience factors. The Commissioner's counsel asked for time to submit further briefing, which the Court granted.

In her letter memorandum, filed on August 18, 2016, ECF No. 15, the Commissioner now contends that the ALJ's finding that Plaintiff was without fault was not based on erroneous information given to her by the Social Security Administration. The Commissioner now argues that the ALJ made an implicit finding of incredulity because Plaintiff's Social Security record contained no information corroborating her telephone contacts with the Administration. However, the Commissioner further argues that the ALJ's determination that she would have been given correct information by the Administration, which she evidently misunderstood, is proper, because she received "SSA Publication Number 05-10095 in January 2002, which contains detailed information regarding working while receiving benefits (*see* Tr. 132). *See generally* https://www.ssa.gov/pubs/EN-05-10095.pdf." Commissioner's Reply letter memorandum at 2 n.2, Aug. 18, 2016, ECF No. 15. In the Record at page 132 is a letter addressed to Plaintiff and dated January 30, 2002, which states as follows:

> We are writing to you because we need to know more about your work. Earnings for 1999 = $17,423 & for 2000 - $36,196. Please provide a monthly

6

> breakdown of your work and earnings from 01/1999 to present.
>
> The enclosed pamphlet, "Working While Disabled . . . How Social Security Can Help," will tell you more about why we need to know about your work.
>
> What You Need to Do
>
> The enclosed form asks for facts we need to know. Please sign, date, and return the completed form within 15 days. We have enclosed an envelope for you to use. If there is no envelope with this letter, please send the form to the address shown above.[2]
>
> If You Have Any Questions
>
> If you have any questions, please let us know. You may also call, write, or visit any Social Security office. If you do contact an office, please have this letter with you. It will help us answer your question.

R. 132. The pamphlet is not included in the Record. The Commissioner's letter cites to a pamphlet, but when the Court follows that citation, it finds a 24-page pamphlet entitled, "Working While Disabled — How We Can Help," dated 2016. The Court determines that the Commissioner's argument in her reply is contrary to the position she took at oral argument, and, further, even if the Court were to credit the new argument raised for the first time in her reply, the argument that Plaintiff was given correct information by Social Security is not supported by substantial evidence in the administrative record.

The record contains no copy of any notice Plaintiff allegedly "would have received" when she returned to work regarding "the impact of work has [sic] on benefits with her award notices." R. 14. *See Daviau v. Astrue*, No. 09-CV-0870 (MAD), 2012 U.S. Dist. LEXIS 701, *13–*14 (N.D.N.Y. Jan. 4, 2012) ("The ALJ erroneously relied upon information that is not contained in the record and failed to address plaintiff's claim that she relied upon information from the SSA."). Further, the ALJ made no explicit credibility determination concerning Plaintiff's claims that she was told she could earn up to

---

[2] The only address "shown above" is the Plaintiff's.

$10,000.00 per year without it affecting her DIB, or, when she called Social Security again as she neared that amount in earnings, that she could work for three years without it affecting her benefits. *Valente*, 733 F.2d at 1046 (ALJ erred when he "made no finding as to Mrs. Valente's credibility, which was a factor critical to any determination of fault."); *see* Social Security Program Operations Manual System GN 02250.010(B)(3) (undocumented allegations of contact with the Agency require an evaluation of the allegation in light of the facts of the case and "[i]f the facts and the allegations are not inconsistent, resolve the question in favor of the person."). The ALJ stated in his decision that he found "no reports of contact with the Agency in the file that support[] the claimant's allegations." R. 15. As Plaintiff's counsel argues, this sentence in the ALJ's decision implies that he discredited her testimony. However, in the very next paragraph, the ALJ concluded that Plaintiff must have been given correct information from Social Security, but misinterpreted it. R. 15.

The ALJ is responsible for developing the record, which he failed to do with respect to the alleged notices Plaintiff "would have received…." R. 15; *Pratts*, 94 F.3d at 37 (ALJ must affirmatively develop the record).This is an error of law, requiring reversal and remand.

Plaintiff also argues that in determining whether requiring repayment under the "equity and good conscience" factors, the ALJ failed to consider the principles of fairness and justice. Pl.'s Mem. of Law 11. In support of this argument, Plaintiff relies on the Eighth Circuit case of *Groseclose v. Bowen*, 809 F.2d 502, 505 (8th Cir. 1987). There, the Court of Appeals interpreted the applicable statute more broadly than the Commissioner's interpretation and concluded that, "[w]e find it difficult to imagine a

more unfair or unjust situation than requiring a person who is without fault to repay overpaid benefits when that person had no knowledge of the overpayments." *Groseclose*, 809 F.2d at 506. The Commissioner points out that *Groseclose* is not binding on the Court, and that the basis for Plaintiff's fairness argument *was* considered by the ALJ: "Plaintiff's argument relies on her testimony that she received erroneous information, which the ALJ considered and did not accept." Comm'r's Mem. of Law 14.

With regard to the persuasiveness of the *Groseclose* case, the Honorable Richard J. Arcara, in *Harzewski v. Chater*, 977 F. Supp. 217, 220 (W.D.N.Y. 1997) (quoting *Quinlivan v. Sullivan*, 916 F.2d 524, 527 (9th Cir. 1990) did adopt the Eighth Circuit's interpretation of "against equity and good conscience" "to mean 'a broad concept of fairness…one that reflects the ordinary meaning of the statutory language and takes into account the facts and circumstances of each case.'" In addition, the Honorable John T. Curtin also followed the Eighth Circuit's more expanded interpretation of "against equity and good conscience" in *Marchese v. Sec'y of Health & Human Svcs.*, 690 F. Supp 162, 163–64 (W.D.N.Y. 1988).

The ALJ's conclusion that recoupment of the overpayments to Plaintiff would not be against equity and good conscience relies in part on his apparent determination that she was not credible in her testimony concerning the advice she received from Social Security. If, on remand, the ALJ determines that her claims are credible, he could obviously conclude that overpayments were because of an error committed by the Commissioner. However, regardless of whether on remand he determines she is credible with respect to her contacts with Social Security, the Court finds that he applied too narrow a standard regarding whether recoupment would be against equity and good conscience.

The Eighth and Ninth Circuit cases cited above are persuasive authority for the concept that equity and good conscience are broader than the Commissioner's narrow interpretation in 20 C.F.R. 404.509. Accordingly, on remand, the ALJ must also address this broader standard. Finally, as pointed out by Plaintiff, the ALJ failed to develop the record sufficiently to determine Plaintiff's expenses and assets. For all these reasons, the Commissioner's decision must be reversed and the case remanded.

## CONCLUSION

The Commissioner's decision is reversed pursuant to sentence four of 42 U.S.C. § 405(g), and the case is remanded for consideration of the factors discussed above.

IT IS SO ORDERED.

DATED:   August 30, 2016
         Rochester, New York

/s/ Charles J. Siragusa
CHARLES J. SIRAGUSA
United States District Judge